**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CQ PARTNERS, LLC** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **NO. 25-6173** |
| **LAKE FOREST HEARING** | : | |
| **PROFESSIONALS, LLC, *et al.*,** | : | |
| | : | |
| Defendants. | : | |

**Perez, J.**                                                    **April 27, 2026**

**<u>MEMORANDUM</u>**

This case involves breach of contract and unjust enrichment claims brought by Plaintiff CQ Partners LLC ("CQ") against Defendants Lake Forest Hearing Professionals, LLC ("Lake Forest") and Dr. Lori Ann Halvorson ("Dr. Halvorson"). CQ seeks to recover damages for Defendants' purchases of hearing aids and other services between 2016 and 2022. Most of those purchases occurred outside the statute of limitations, so Defendants moved to dismiss the complaint. Although CQ argues the acknowledgement doctrine tolled the limitations period for its claims, it has not established Defendants clearly and unequivocally promised to pay the debt on demand. The acknowledgement doctrine, therefore, does not save CQ's claims. For these reasons and the reasons discussed below, Lake Forest's motion is granted.

**I.      Background[1]**

CQ is a Delaware limited liability company that is the assignee of certain assets of Your Hearing Network, LLC, formerly known as American Hearing Aid Associates (AHAA), including

---

[1] For this motion, the Court accepts as true all well-pled factual allegations in the Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

the alleged outstanding amount at issue in this case. ECF No. 1 ¶¶ 1–2. Dr. Halvorson owns Lake Forest, an audiology practice located in Illinois. *Id.* ¶ 8.

On June 8, 2004, Dr. Halvorson submitted an application for membership with the AHAA for discounted hearing aid prices and other services. *Id.* ¶ 8. The "Purchase Agreement" in the application set forth the terms that governed any purchase Lake Forest made from AHAA. *Id.* ¶ 9. The application also included a personal guaranty of payment by Dr. Halvorson. *Id.* ¶ 10. The application stipulated that payments for all purchases from AHAA were due the last day of the month following the invoice date. *Id.* ¶ 11. If Lake Forest failed to make a payment when due, all sums would be due and payable. *Id.* ¶ 12. A "Finance Charge" of 1.5% per month would be imposed on overdue invoices. *Id.* ¶ 13.

Lake Forest purchased and paid for products from AHAA for many years; however, beginning in 2016, its payments became inconsistent and incomplete, and it began to carry overdue balances. *Id.* ¶ 14. Lake Forest continued to make purchases from AHAA and later its successor CQ through June 2022. *Id.* ¶ 15. Lake Forest made partial payments on amounts owed until July 2022. *Id.* ¶ 16. Thereafter, Lake Forest only made "nominal payments" towards its outstanding principal balance. *Id.* ¶ 16. Lake Forest did not make any additional purchases from CQ between June and September 2022, when it bought $15,759.99 worth of product.[2] Compl. Ex. B, ECF No. 1-1. Thus, CQ alleges that Lake Forest is in default under the terms of the application. ECF No. 1 ¶ 17.

CQ "has attempted to negotiate with Lake Forest in a good faith attempt to resolve this dispute, to no avail." *Id.* ¶ 18. CQ alleges it is owed a total of $3,083,145.66, consisting of: (1) the total principal amount; (2) interest; and (3) attorneys' fees as stipulated by the application. *Id.* ¶¶

---

[2] The invoice CQ attaches to the Complaint shows no new purchases between April 2020 and August 2022, with the only purchase thereafter occurring in September 2022. Compl. Ex. B, ECF No. 1-1.

19–22. The principal amount consists of $1,097,292.50 in purchases before October 29, 2021, and $15,759.99 thereafter.

CQ filed its Complaint on October 29, 2025, asserting claims for breach of contract (Counts I and II) and unjust enrichment (Count III). ECF No. 1. On January 7, 2026, Defendants moved to dismiss, arguing that CQ's claims are barred by the statute of limitations. ECF No. 14. CQ filed a response in opposition on January 23, 2026, arguing the acknowledgement doctrine saves its claims from the statute of limitations, ECF No. 18, and Defendants filed a reply on January 30, 2026, ECF No. 19.

## II.    Discussion

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.    Breach of Contract

In Pennsylvania, the statute of limitations for a breach of contract claim is four years. 42 Pa. Cons. Stat. § 5525; *see also New York Cent. Mut. Ins. Co. v. Edelstein*, 637 F. App'x 70, 72 (3d Cir. 2016) ("Pennsylvania imposes . . . [a] four-year statute of limitations . . . to breach of contract claims."). The statute of limitations on a breach of contract claim begins to run when the cause of

3

action accrues. *Leedom v. Spano*, 647 A.2d 221, 226 (Pa. 1994). In actions involving periodic payments, "a separate and distinct cause of action accrues for each payment as it becomes due." *Fresh Start Indus., Inc. v. ATX Telecomms. Servs.*, 295 F. Supp. 2d 521, 525 (E.D. Pa. 2003). Accordingly, as CQ recognizes, unless the statute of limitations was tolled, CQ's breach of contract claims for defaults occurring before October 29, 2021, are time-barred. CQ argues the statute of limitations was tolled by Lake Forest's acknowledgement, or promise to pay, its debts. The "plaintiff has the burden to plead and prove that it is entitled to equitable tolling." *Sunlight Elec. Contracting Co. v. Turchi*, No. 08-5834, 2011 WL 4086077, at *9 (E.D. Pa. Sept. 13, 2011) (cleaned up). CQ has not carried that burden here.

Under the acknowledgement doctrine, an obligor's communication of its acknowledgement of the debt can toll the statute of limitations, but it must be "[a] clear, distinct and unequivocal acknowledgement" with "no uncertainty either in the acknowledgement or in the identification of the debt." *Huntingdon Fin. Corp. v. Newtown Artesian Water Co.*, 659 A.2d 1052, 1054 (Pa. Super. Ct. 1995) (citation omitted). The acknowledgement must plainly refer to the specific debt for which the plaintiff seeks to recover. *Id.* It must "be consistent with a promise to pay *on demand*," not "a mere willingness to pay at a future time." *Id.* (emphasis added); *see also Loeffler Thomas P.C. v. Fishman*, No. 15-5194, 2016 WL 1457895, at *8 (E.D. Pa. Apr. 12, 2016) (Defendant's "promise in December 2012 to pay the invoices at some unspecific future time is not sufficient to trigger application of the acknowledgment doctrine and toll the statute of limitations."); *Sunlight Elec. Contracting*, 2011 WL 4086077 at *8–9 (finding unconditional promise to pay "in full all amounts due and owing for all of the work performed" cannot trigger acknowledgement doctrine without promise to pay "on demand"). Merely declaring an intent or

desire to discharge an obligation does not amount to a promise to pay. *Huntingdon Fin. Corp.*, 659 A.2d 1052 at 1054.

Pennsylvania courts have also recognized that "[t]here can be no more clear and unequivocal acknowledgement of debt than actual payment." *Huntingdon Fin. Corp.*, 659 A.2d 1052 at 1054; *see also GE Med. Sys. v. Silverman*, No. 96-4596, 1998 WL 54361, at *3 (E.D. Pa. 1998) (holding letter agreement that reduced monthly payments under a lease combined with partial payments of those amounts constituted constructive acknowledgement of the debt). However, "[i]n order for a partial payment to toll the statute of limitations, the payment must constitute a constructive acknowledgement of the debt from which a promise to pay the balance may be inferred." *Cole v. Lawrence*, 701 A.2d 987, 990 (Pa. Super. Ct. 1997).

Here, CQ asserts that Lake Forest acknowledged the debt by (1) making "partial payments" and (2) promising to CQ that it would pay the outstanding obligation by negotiating with CQ in good faith to craft a mutually acceptable payment plan. CQ bases this argument on a verified petition to strike/open a judgment Lake Forest filed in a prior proceeding in the Chester County Court of Common Pleas. *See* Ex. 1 to CQ's Opp. ¶¶ 10, 51, ECF No. 18-1. Neither argument is convincing.

First, it is unclear whether Lake Forest's "partial payments" were made for amounts owed for that month's principal, past unpaid principal, interest, or the total debt. So, it is equally unclear which of these debts Lake Forest potentially acknowledged by making these partial payments. *See Huntingdon Fin. Corp.*, 659 A.2d at 1055 (holding that plaintiff's payment of the entire principal amount was an acknowledgement only of the principal portion of the debt and not the interest portion). CQ argues that Defendants' payments of "all sums due since March 2020, except for one payment in September 2022" amount to partial payments toward the outstanding debt. The

problem with this argument is that while those payments could constitute an acknowledgement of payment obligations accruing after March 2020, they do nothing to show an acknowledgement of debt that accrued before then. If Lake Forest was making partial payments on amounts owed for products that were received that month, it would only be constructively acknowledging its debt for that month and not overdue principal or interest. Thus, the nonspecific partial payments do not establish an unequivocal acknowledgement of the debt.

Second, Lake Forest's promises to pay the outstanding debt and their negotiations to craft a payment plan are not an acknowledgement of the debt. The negotiations are not enough to invoke the acknowledgement doctrine because they did not contain a promise to pay the debt on demand. *Sunlight Elec. Contracting*, 2011 WL 4086077 at *8–9 (dismissing breach of contract claims where plaintiff failed to plead defendant promised to pay "on demand"). CQ relies on *GE Medical*, which found that partial payments coupled with negotiations could be sufficient to trigger the acknowledgement doctrine. 1998 WL 54361 at *3. However, CQ has not pled sufficient information to plausibly establish Lake Forest's partial payments amounted to constructive acknowledgement of the entire debt. The negotiations in this case are distinguishable from those in *GE Medical*. Here, the negotiations resulted in no agreement. In CQ's own words, the parties attempted to negotiate to resolve the dispute "to no avail." There are no allegations that the negotiations resulted in an agreement (or acknowledgement from Defendants) on the amount of the debt owed or that Defendants ever agreed to pay "on demand." Thus, CQ's breach of contract claims arising before October 29, 2021 are untimely.

### B.     Unjust Enrichment

The unjust enrichment claims arising before October 29, 2021, are likewise untimely. The parties agree that the statute of limitations for an unjust enrichment claim is four years but disagree

6

when it begins to accrue. Lake Forest contends that a separate cause of action for unjust enrichment occurred each instance when it did not timely pay the invoices. CQ contends that its unjust enrichment claim began to accrue no earlier than July 2022 because the statute of limitations for an unjust enrichment claim begins to accrue when the parties terminate their relationship.

Generally, unjust enrichment claims accrue "as soon as the right to institute and maintain the suit arises." *Sevast v. Kakouras*, 915 A.2d 1147, 1153 (Pa. 2007) (holding the statute of limitations began to accrue when a court terminated the parties' contract and not when the defendant later sold and retained proceeds of the property in dispute). Pennsylvania courts have presented seemingly conflicting standards that govern when unjust enrichment claims accrue. First, courts have stated that the claim begins to accrue "when the defendant receives and retains benefits." *Williams v. Elliott*, No. 18-5418, 2024 WL 3937560, at *6 (E.D. Pa. Aug. 26, 2024); *Vullings v. Bryant Heating & Cooling Sys.*, No. CV 18-3317, 2019 WL 687881, at *4 (E.D. Pa. Feb. 19, 2019) (holding that the statute of limitations began to accrue when plaintiff purchased a product). Second, courts have also stated that a claim for unjust enrichment "begin[s] to accrue as of the date on which the relationship between the parties is terminated." *Colonial Assur. v. Mercantile and General Reinsurance Co., Ltd.*, 130 F. App'x. 607, 609 (3d. Cir. 2005) (not precedential) (citing *Cole*, 701 A.2d at 989 ("[Q]uantum meruit actions begin to accrue as of the date on which the relationship between the parties is terminated.")).

In this case the Court finds that CQ's unjust enrichment claim began to accrue when Lake Forest received and retained benefits of AHAA/CQ's products and services. CQ points to an unpublished Third Circuit opinion in support of its argument that the claims accrued later—when CQ and Lake Forest terminated their relationship sometime after July 2022. However, that case is not only not precedential, it is also distinguishable. The case involved residual guarantee insurance,

for which the plaintiff paid premiums in exchange for the guarantee that certain equipment would have a stated value at a future time. *Colonial Assur. Co. v. Mercantile & Gen. Reassur. Co.*, 297 F. Supp. 2d 764, 767 (E.D. Pa. 2003). When the plaintiff's business was declared insolvent, it was liquidated and the insurance company sought recission and a declaratory judgment that any reinsurance obligations it had were void. *Id.* The plaintiff sued, claiming the insurance company was unjustly enriched by keeping the premiums the plaintiff had paid but disclaiming coverage on its reinsurance obligations. *Id.* at 768. On appeal, the Third Circuit held that the relationship between the insurer and the insured was terminated when the insurer refused to pay the claims and sought declaratory judgment that the contract was void. *Colonial Assur.*, 130 F. App'x at 609.

In so holding, the court relied on *Cole v. Lawrence*, for the proposition that unjust enrichment claims accrue when the parties terminate their relationship. The Third Circuit applied that rule without considering whether a different accrual rule might apply. Nonetheless, *Cole* is also distinguishable from this case. There, a doctor who had been providing ongoing treatment to a patient brought a *quantum meruit* action to recover payments for his services. 701 A.2d at 989.[3] The doctor submitted bills to the patient and her health insurer for services rendered after the patient was last treated. *Id.* at 988. The patient made payments for around six months thereafter, and the insurer made an additional payment the following year. *Id.* The doctor sued within four years of the insurer's last payment but more than four years after he submitted the bills. *Id.* By contrast, here, CQ submitted individual bills to Lake Forest throughout their relationship. Each invoice had its own individual due date of the last day of the month following the invoice date.

---

[3] A quantum meruit claim is a species of unjust enrichment claims. A claim for unjust enrichment "asks whether a defendant unfairly benefitted from the circumstances alleged," whereas a claim for quantum meruit "asks whether a plaintiff received fair value in the exchange." *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 276 n.30 (W.D. Pa. 2021).

*Cole* is also distinguishable in that it involved a *quantum meruit* claim, which a court in this district has distinguished from unjust enrichment with respect to when they accrue. *Williams v. Elliott*, No. 18-5418, 2024 WL 3937560, at *6 (E.D. Pa. Aug. 26, 2024). "An unjust enrichment claim accrues when the defendant receives and retains benefits, . . . and quantum meruit claims accrue on the date on which the relationship between the parties is terminated." *Id.* (internal quotations omitted).

The rule in *Cole* makes sense in a case like *Colonial Assurance* because the insurer would not have been unjustly enriched—*i.e.*, retained a benefit—until it refused to pay the claims. Additionally, the refusal to pay occurred at the same time as the termination of the parties' relationship. *Colonial Assur.*, 130 F. App'x at 609 (holding "that the relationship between [the parties] was terminated when [defendant] refused to pay claims and sought declaratory judgment that the contract was void"). That is not the case here. Lake Forest was required, by written agreement, to pay for products and services it purchased on the "last day of the month following the invoice." ECF No. 1-1 at 4. Each time Lake Forest received the hearing aids and failed to pay the invoice by the deadline, it retained an independent benefit to CQ's detriment that would be independently actionable. Therefore, the statute of limitations for CQ's unjust enrichment claims began to accrue for each purchase when Lake Forest did not make full timely payment. *See Vullings v. Bryant Heating & Cooling Sys.*, No. CV 18-3317, 2019 WL 687881, at *4 (E.D. Pa. Feb. 19, 2019) (holding that an unjust enrichment claim began to accrue when the defendant received and did not pay for the product). CQ's unjust enrichment claim is untimely.

9

### C.      Dismissal Based on Lack of Subject Matter Jurisdiction

CQ's claims arising after October 29, 2021, must also be dismissed because this Court lacks diversity jurisdiction where the amount in controversy is less than $75,000.[4] *See* 28 U.S.C. § 1332(a)(1). In determining whether the amount in controversy is met, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). However, a court may dismiss a claim "when a subsequent revelation clearly establishes that the plaintiff's claims never could have amounted to the sum necessary to support diversity jurisdiction." *Huber v. Taylor*, 532 F.3d 237, 244–46 (3d Cir. 2008).

CQ never could have recovered the amounts from its pre-October 2021 claims because they are barred by the statute of limitations. CQ's only claim that is not time-barred is for $15,759.99. The amount in controversy was, therefore, below $75,000 at the time CQ filed the Complaint. This Court dismisses the Complaint in full.

### D.      Leave to Amend

CQ did not request leave to amend. Nonetheless, this Court may consider dismissing CQ's claims without prejudice. Lake Forest argues that the claims should be dismissed with prejudice because other courts have dismissed with prejudice breach of contract claims that were time barred. *See Sunlight Elec. Contracting*, 2012 WL 13202486 at *5 ("[T]he statute of limitations bars both of Sunlight's breach of contract claims . . . we will therefore not permit Sunlight to amend its complaint to assert these counts."); *Colonial Assur. Co. v. Mercantile & Gen. Reinsurance Co.*, 297 F. Supp. 2d 764, 771 (E.D. Pa. 2003) (dismissing time-barred breach of contract and unjust enrichment claims with prejudice). However, when a complaint is subject to Rule 12(b)(6) dismissal, the court should permit curative amendment unless it would be futile or inequitable.

---

[4] A court may raise the issue of subject matter jurisdiction *sua sponte* at any time during a lawsuit. Fed. R. Civ. P. 12(h)(3).

10

*Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, 516 F. Supp. 3d 450, 462 (E.D. Pa. 2021). The Court cannot determine whether curative amendment would be futile at this time. If CQ can, consistent with Fed. R. Civ. P. 11, plead additional facts to support that Defendants acknowledged their debt, curative amendment would not be futile. Therefore, the Complaint is dismissed without prejudice.

An appropriate Order follows.