**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CQ PARTNERS, LLC** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| **v.** | : | |
| | : | **NO. 25-6173** |
| **LAKE FOREST HEARING PROFESSIONALS, LLC, *et al.*,** | : | |
| Defendants. | : | |

**Perez, J.** **November 2, 2026**

## MEMORANDUM

This case involves a breach of contract claim brought by Plaintiff CQ Partners LLC ("CQ") against Defendants Lake Forest Hearing Professionals, LLC ("Lake Forest") and Dr. Lori Ann Halvorson ("Dr. Halvorson"). CQ seeks to recover damages for Lake Forest's purchases of hearing aids and other services between 2016 and 2022. The Court previously dismissed CQ's claims without prejudice because they were time-barred. Although CQ argued the statute of limitations was tolled due to Lake Forest's alleged acknowledgment of the debt owed, the Court found CQ had not sufficiently pled enough facts to invoke the acknowledgment doctrine.

CQ subsequently amended its complaint, pleading additional facts to support its claim that the acknowledgment doctrine tolled the statute of limitations. Specifically, CQ alleges a letter signed by Dr. Halvorson and a Verified Petition Lake Forest previously submitted in a state court proceeding show Lake Forest acknowledged the debt owed to CQ. However, the letter explicitly disputes the amount owed, and the Verified Petition does not constitute acknowledgement or a promise to pay on demand. For these reasons and the reasons discussed below, Lake Forest's motion is granted.

## I. Background[1]

CQ is the assignee of certain assets of Your Hearing Network, LLC, formerly known as American Hearing Aid Associates (AHAA), including the alleged outstanding amount at issue in this case. 2d Am. Compl. (SAC), ECF No. 25 ¶ 1–2. Dr. Halvorson owns Lake Forest Hearing Professionals, LLC, an audiology practice located in Illinois. *Id.* ¶¶ 3–4, 8.

The Court previously set forth the facts of this case in its April 27, 2026 Memorandum, so it does not recite them in full here. ECF No. 20. In essence, CQ seeks to recover the amounts owed from Lake Forest's hearing aid purchases between 2022 and 2026. *See* ECF No. 25. The Court previously dismissed the Complaint without prejudice because the claims were barred by the statute of limitations, and any claims that remained viable did not satisfy the jurisdictional amount. ECF No. 20. On May 18, 2026, CQ filed an Amended Complaint to provide more factual allegations to satisfy the acknowledgment doctrine. ECF No. 22. On June 12, 2026, CQ filed the SAC, removing an unjust enrichment claim. ECF No. 25. In the SAC, CQ adds that Lake Forest has "confirmed and acknowledged the debt owed to CQ under the Membership Agreement" and pleads two additional facts. *Id.* ¶ 25–27.

First, CQ alleges Dr. Halvorson acknowledged Lake Forest's debt to CQ via her written response to a letter sent by CQ. *Id.* ¶ 26. On November 23, 2021, CQ sent Lake Forest a letter stating: "In connection with the audit of our financial statements, please confirm directly to our auditor . . . **the amount owed to us as of October 31st 2021 amounted to $1,191,254.78**." *Id.* at 16. On January 25, 2022, Dr. Halvorson, on behalf of Lake Forest, returned the letter to the auditor. *Id.* ¶ 26. Beneath the heading "CONFIRMATION," there are two boxes: "A. The balance above

---

[1] For this motion, the Court accepts as true all well-pled factual allegations in the Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

agrees with my records"; and "B. My records show a balance of $________." *Id.* at 16. Dr. Halvorson checked box B and wrote that Lake Forest's records showed a balance of $617,042.03, not the amount shown in CQ's accounting records. *Id.*

The second new fact CQ pleads is that Lake Forest acknowledged the debt in a separate proceeding between the parties. *Id.* ¶ 27. On April 6, 2023, in a Verified Petition submitted in the Chester County Court of Common Pleas, Dr. Halvorson stated that "she and Lake Forest 'had been negotiating in good faith to craft a mutually acceptable payment plan to address [their] obligations under the Membership Application' and that 'Lake Forest has timely paid all sums due [to CQ] since March 2020. . . .'" *Id.*

On June 16, 2026, Lake Forest moved to dismiss the SAC with prejudice, again asserting the claims are time barred and the SAC pleads insufficient facts to raise an inference that Plaintiffs acknowledged the debt owed such that the statute of limitations may be tolled. ECF No. 26. CQ responded in opposition on July 14, 2026, and provided a copy of the Verified Petition. ECF No. 29. Lake Forest replied on July 20, 2026. ECF No. 30.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept as true the complaint's well pleaded factual allegations

and draw all reasonable inferences in the plaintiff's favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

## III. Discussion

In Pennsylvania, the statute of limitations for a breach of contract claim is four years. 42 Pa. Cons. Stat. § 5525; *see also New York Cent. Mut. Ins. Co. v. Edelstein*, 637 F. App'x 70, 72 (3d Cir. 2016). The statute of limitations begins to run when the cause of action accrues. *Leedom v. Spano*, 647 A.2d 221, 226 (Pa. 1994). In actions involving periodic payments, "a separate and distinct cause of action accrues for each payment as it becomes due." *Fresh Start Indus., Inc. v. ATX Telecomms. Servs.*, 295 F. Supp. 2d 521, 525 (E.D. Pa. 2003) (citation omitted); *see also Resol. Tr. Corp. v. Koock*, 867 F. Supp. 284, 288 (E.D. Pa. 1994). The "plaintiff has the burden to plead and prove that it is entitled to equitable tolling." *Sunlight Elec. Contracting Co. v. Turchi*, No. 08-5834, 2011 WL 4086077, at *9 (E.D. Pa. Sept. 13, 2011) (cleaned up).

Where the defendant has acknowledged that it owes a debt and promised to pay it, the statute of limitations may be tolled under the acknowledgment doctrine. The party seeking to invoke the acknowledgment doctrine must show an obligor's acknowledgment of the debt was (1) "[a] clear, distinct and unequivocal acknowledgement" and (2) "consistent with a promise to pay *on demand,*" not "a mere willingness to pay at a future time." *Huntingdon Fin. Corp. v. Newtown Artesian Water Co.*, 659 A.2d 1052, 1054 (Pa. Super. Ct. 1995) (citation omitted). CQ still has not pled sufficient facts to allow this Court to reasonably infer that Lake Forest's communications have met these requirements.

**A. Dr. Halvorson's Written Letter Response Is Not an Unequivocal Acknowledgment of the Debt at Issue.**

Under the acknowledgment doctrine, there must be "no uncertainty either in the acknowledgement or in the identification of the debt." *Id.* An acknowledgment must plainly refer to the specific debt for which the plaintiff seeks to recover. *Id.* Statements that "do not clearly identify the debt do not toll the statute of limitations." *Cole v. Lawrence*, 701 A.2d 987, 990 (Pa. Super. Ct. 1997) (citation omitted); *see also In re Pagnotti*, 269 B.R. 326, 335 (Bankr. M.D. Pa. 2001) (finding that a debtor acknowledging all the incurred debts during negotiations is not acknowledgment per the doctrine); *K.A.R. v. T.G.L.*, 107 A.3d 770, 782 (Pa. Super. Ct. 2014) (finding husband's verification of the amount for a settlement payment was not an acknowledgment of debt or promise to pay).

On or around November 23, 2021, CQ's financial auditor sent a letter to Lake Forest, requesting confirmation of whether Lake Forest's records agreed with CQ's that the balance Lake Forest owed CQ was $1,191,254.78. ECF No. 25 at 16. The letter has two check boxes under an all-caps heading titled "CONFIRMATION." *Id.* Box "A" states, "The balance above agrees with my records," and box "B" states, "My records show a balance of $________." *Id.* Dr. Halvorson selected box "B" and filled in the blank to show Lake Forest's records show a balance of $617,042.03, inconsistent with the auditor's figure of $1,191,254.78 and in disagreement with CQ's claim. *Id.* CQ claims this letter shows Lake Forest's confirmation and acknowledgment of the debt. *Id.* ¶ 26.

CQ misunderstands the strict requirements of the acknowledgment doctrine. Although Dr. Halvorson indicated Lake Forest's records show a balance of $617,042.03, this directly contradicts the amount CQ claimed was owed. Moreover, CQ's breach of contract claim is regarding a total debt in the amount of $3,083,145.66. *Id.* ¶ 22. CQ breaks this down into a principal amount of

$1,113,052.49, interest in the total of $1,353,464.04 and attorneys' fees in the amount of $616,629.132. *Id.* ¶¶ 19–22. Neither of the figures in the letter match the principal amount CQ seeks in this action. Nor do CQ's accounting records, attached to the SAC as Exhibit B, show where the amount shown in CQ's letter came from. These facts, even with all reasonable inferences drawn in CQ's favor, are not sufficient to plausibly deduce the specific debt referred to in the letter and whether it is the specific debt for which CQ seeks to recover. The acknowledgment doctrine requires a plain reference to the specific debt. No such reference may be inferred here.

Moreover, Dr. Halvorson's letter is a dispute of the debt, not a clear, distinct and unequivocal acknowledgment. Without acknowledgment, the Court need not assess whether Dr. Halvorson's written response met the second prong of the acknowledgment doctrine (a promise to pay the debt on demand).

**B. Lake Forest's Partial Payments and Verified Petition are Not Sufficient to Infer Acknowledgment.**

Pennsylvania courts have also recognized that partial payments of the debt can replace an explicit acknowledgment and toll the statute of limitations. *GE Med. Sys. v. Silverman*, No. 96-4596, 1998 WL 54361, at *4; *see also Quaker City Chocolate & Confectionary Co. v. Delhi–Warnock Bldg. Ass'n,* 357 Pa. 307, 313 (Pa. 1947) ("[O]rdinarily, a payment on account of a debt is regarded as an acknowledgment of liability and of willingness to pay the balance due thereon and therefore is held to interrupt the operation of the statute."); *Huntingdon Fin. Corp.*, 659 A.2d at 1054 ("There can be no more clear and unequivocal acknowledgement of debt than actual payment."). The partial payment "must constitute a constructive acknowledgement of the debt from which a promise to pay the balance may be inferred." *Cole*, 701 A.2d at 990. For a debt to be constructively acknowledged, partial payments "must be referable to the very debt upon which the action is based." *City of Phila. v. Holmes Elec. Protective Co. of Phila.*, 6 A.2d 884, 888 (Pa. 1939);

*see also GE Med. Sys.*, 1998 WL 54361, at *3 (holding a letter agreement that reduced monthly payments under a lease combined with partial payments of those amounts constituted constructive acknowledgment of the debt). In agreements involving periodic payments or separate transactions, each bill under the agreement accrues its own limitations period when not paid by the deadline. *See Fresh Start Indus., Inc.*, 295 F. Supp. 2d at 525; *Koock*, 867 F. Supp. at 288.

Here, CQ pleads that Lake Forest made partial payments on the amounts owed until July 2022. ECF No. 25 ¶ 16. Since then, Lake Forest has failed to make payments, other than in "nominal amounts," toward the outstanding principal balance. *Id*. CQ also pleads that there were negotiations to establish a payment plan. *Id*. ¶ 27. However, notably, CQ alleges that negotiations to establish a payment plan failed, *Id*. ¶ 18, and Lake Forest disputed the debt it owed. *Id*. ¶ 26.

Any partial payments Lake Forest made are not "referable to the very debt upon which the action is based" because while making payments toward some transaction within the limitations period, Lake Forest disputed the balance. *Holmes Elec. Protective Co. of Phila.*, 6 A.2d at 888 (finding statute of limitations not tolled based on defendant's partial payment where partial payment was for a different balance). Further, the failed negotiations demonstrate that although there may have been partial payments, the parties never agreed upon the amount owed—*i.e.*, that Lake Forest did not acknowledge the debt CQ now demands.

Because of CQ's inconsistent allegations, it cannot be reasonably inferred that partial payments, paired with a dispute of the amount owed, plausibly constitute constructive acknowledgment of the debt sufficient to toll the statute of limitations.

### C. Even if Constructive Acknowledgment Is Inferred, the Partial Payments and Verified Petition Do Not Plausibly Constitute a Promise to Pay on Demand.

In addition to an acknowledgment of the debt, there must also be a promise to pay on demand. *Huntingdon Fin. Corp.*, 659 A.2d at 1054. This promise can be inferred. *Cole*, 701 A.2d

at 990. However, to demonstrate an inferred promise to pay, an obligor must do more than merely declare an intent or desire to discharge an obligation. *Huntingdon Fin. Corp.*, 659 A.2d 1052 at 1054; *see also Loeffler Thomas P.C. v. Fishman*, No. 15-5194, 2016 WL 1457895, at *8 (E.D. Pa. Apr. 12, 2016) (Defendant's "promise in December 2012 to pay the invoices at some unspecific future time is not sufficient to trigger application of the acknowledgment doctrine and toll the statute of limitations."). The promise to pay must also be a promise to pay on demand. *Sunlight Elec. Contracting*, 2011 WL 4086077 at *8–9 (finding an unconditional promise to pay "in full all amounts due and owing for all of the work performed" cannot trigger acknowledgment doctrine without promise to pay "on demand"). If the obligor disputes an obligation to pay the debt, an agreement for partial payments or a payment plan "does not contain an unequivocal, unconditional promise to pay the remaining debt." *GE Med. Sys.,* 1998 WL 54361 at *4 ("If [Defendant] had disputed its obligation to pay the debt or if it had not made the partial payments, defendants' argument [that the acknowledgment doctrine does not apply] would be correct because the agreement standing alone does not contain an unequivocal, unconditional promise to pay the remaining debt.").

To show Lake Forest's promise to pay the debt, CQ pleads that in April 2023, Lake Forest submitted a Verified Petition in state court in which Lake Forest addresses "negotiating in good faith to craft a mutually acceptable payment plan to address [Lake Forest's] obligations under the Membership application." ECF No. 25 ¶ 27. This does not show Lake Forest made a promise to pay, much less a promise to pay on demand.[2] CQ does not state whether the outcome of the 2023

[2] CQ alleges the Verified Petition shows Lake Forest was negotiating a payment plan and made payments since March 2020. ECF No. 25 ¶ 27. Notably, the Verified Petition primarily shows Lake Forest's dispute of the debt. The full Verified Petition shows Lake Forest requesting to strike and/or open the judgment of confession entered against it. ECF No. 29 at 12–58. In the Verified Petition, Lake Forest disputes the amounts owed to CQ, claims the attorney's fees are unreasonable, and states CQ "manufactured or contributed to the default." ECF No. 29 at 16, 25, 31. Normally,

Verified Petition resulted in payments being made. As noted above, CQ alleged the contrary, claiming that negotiations between the parties failed, and Lake Forest disputed the amount it owed. *Id*. ¶¶ 18, 26. Based on the facts pled, the Court cannot infer that Lake Forest promised to pay the balance on demand based on the negotiations referenced in the Verified Petition. Therefore, even if CQ had shown acknowledgment of the debt, CQ still does not satisfy the doctrine.

## IV. Conclusion

CQ's claims are time barred. As the Court previously noted, the only claim brought within the limitations period is for $15,759.99, which is below the amount in controversy required for diversity jurisdiction. ECF No. 20 at 10. The Court previously permitted CQ to file a curative amendment. Thus, further amendment would be futile and inequitable. *See Sunlight Elec. Contracting Co. v. Turchi*, No. 08-5834, 2012 WL 13202486, at *5 (E.D. Pa. Apr. 24, 2012) ("[T]he statute of limitations bars both of Sunlight's breach of contract claims… we will therefore not permit Sunlight to amend its complaint to assert these counts[.]"). The Court, therefore, grants Lake Forest's motion to dismiss with prejudice.

An appropriate order follows.

---

this would not be included for consideration of a motion to dismiss. However, CQ provided this document itself. Even if the Verified Petition in its entirety were to be considered, it still does not satisfy the acknowledgment doctrine.